AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Nelson Enrike Ramirez | ) |
| | ) |
| | ) |
| | ) |
| | ) |

Case No. 4:21-mj-70416-MAG

*Defendant(s)*

**FILED**

Mar 05 2021
SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____November 6, 2020_____ in the county of _____Alameda_____ in the _____Northern_____ District of _____California_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Robbery Affecting Interstate Commerce |
| | Maximum penalties: 20 years prison; fine that is the greater of $250,000, twice the gross pecuniary gain to the defendant, or twice the gross pecuniary loss inflicted on another; 3 years supervised release, $100 mandatory special assessment, forfeiture. |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Mikael Bergh.

☑ Continued on the attached sheet.

/s/ Mikael Bergh
*Complainant's signature*

Mikael Bergh, FBI SA
*Printed name and title*

Approved as to form   /s/ Noah Stern
AUSA   Noah Stern

Sworn to before me by telephone.

Date: March 5, 2021

*Susan van Keulen*
*Judge's signature*

City and state:   San Jose, California

Hon. Susan van Keulen, U.S. Magistrate Judge
*Printed name and title*

## <u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT</u>

I, Mikael Bergh, Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), being duly sworn, state:

## I.   INTRODUCTION

1.      I submit this affidavit in support of an application under Rule 4 of the Federal Rules of Criminal Procedure for a criminal complaint and arrest warrant authorizing the arrest of Nelson Enrike Ramirez ("RAMIREZ") for robbery affecting interstate commerce in violation of Title 18, United States Code, Section 1951(a), committed on or about November 6, 2020 in the Northern District of California.

## II.   SOURCES OF INFORMATION

2.      This affidavit is submitted for the limited purpose of a securing a criminal complaint and arrest warrant.  I have not included every fact known to me concerning this investigation.  Instead, I have set forth only the facts necessary to establish probable cause that violations of the federal law identified above have occurred.

3.      I have based my statements in this affidavit on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by other agents and law enforcement officers, including officers from the Fremont Police Department ("FPD"), Union City Police Department ("UPD"), Hayward Police Department ("HPD"), Campbell Police Department ("CPD"), information provided by reports prepared by other agents and law enforcement officers, and information provided by records and databases.  Where I refer to conversations and events, I often refer to them in substance and in relevant part rather than in their entirety or verbatim, unless otherwise noted.  This affidavit also reflects my current understanding of facts relating to this investigation, but my understanding may change in the future as the investigation proceeds.

Bergh Aff. in Support of Criminal
Complaint

### III.    AFFIANT BACKGROUND

4.      I have been employed as a Special Agent of the FBI for approximately seventeen years.  I am currently assigned to the San Francisco Division, Oakland Resident Agency.  My investigative responsibilities are violent crimes, which includes commercial robberies, illicit firearms possession, and car-jackings.  I received training at the FBI Academy in Quantico, Virginia, including training on criminal procedure, search and seizure, and violent crimes. During the course of my career with the FBI, I have participated in numerous investigations involving violent and weapons-related crimes, and in the execution of numerous search and arrest warrants relating to such investigations.

### IV.    APPLICABLE STATUTES

5.      Title 18, United States Code, Section 1951(a) provides: "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both."

6.      The elements of 18 U.S.C. § 1951(a) are as follows: (1) the defendant knowingly obtained money or property from or in the presence of a victim, (2) the defendant did so by means of robbery, (3) the defendant believed that the victim parted with the money or property because of the robbery, and (4) the robbery affected interstate commerce.

### V.    FACTS SUPPORTING PROBABLE CAUSE

#### A.    <u>Overview</u>

7.      There is probable cause that between May 2020 and November 2020, RAMIREZ completed or attempted approximately twenty-three commercial robberies in the San Francisco

Bay Area.[1]  Approximately twenty-two of the robberies took place in October or November 2020.  Although the circumstances of the robberies vary, in a typical robbery, RAMIREZ would enter a convenience store or gas station wearing a black/grey inside-out hooded sweatshirt and a COVID mask.  He would approach the clerk and demand money.  In many robberies, RAMIREZ brandished or pointed what appeared to be a black semiautomatic handgun at the clerk, but was potentially a replica firearm made of rubber.[2]  During most of the robberies, RAMIREZ apologized to the clerk and said that he needed money because he had a sick child at home.[3] Sometimes RAMIREZ asked for a specific amount of money (e.g., $200) before brandishing what appeared to be a firearm and demanding that the clerk open the register.  After being handed cash by the clerk or taking it himself from the register, RAMIREZ would leave the store.

       8.     Law enforcement identified RAMIREZ as the perpetrator of the robberies after a gold Honda Accord (hereinafter, "gold Honda") was captured on surveillance footage in the time period surrounding two robberies in Fremont on or about November 13, 2020.  On or about November 16, 2020, plain-clothes FPD surveillance units noted RAMIREZ driving the gold Honda in the area of his residence and followed him.  RAMIREZ stopped at a gas station in

---

[1] Of the twenty-three robberies in my investigation, twenty-one of them were completed.  The robberies or attempted robberies occurred in Fremont, Newark, Hayward, Union City, Campbell, Milpitas, Mountain View, Los Altos, and Sunnyvale.

[2] When RAMIREZ was apprehended, a black replica firearm was found in his car.  The replica firearm may be the same object that surveillance footage shows RAMIREZ showing during many of the robberies.  A second replica firearm was found in RAMIREZ's residence.

[3] After RAMIREZ was apprehended, he told investigators that he has no children.  In approximately five of the robberies (including both attempted robberies), according to the police reports, the victim did not report any reference to anyone being sick.  In approximately two of the robberies, RAMIREZ stated he needed money because he was sick, and in approximately three other robberies, RAMIREZ stated that he needed money because someone else was sick, without referring to a child.

BERGH AFF. IN SUPPORT OF CRIMINAL COMPL.

Union City and approached the plain-clothes FPD officers.  Marked UCPD officers who were at the gas station identified RAMIREZ and arrested him on an outstanding warrant.  Officers looked in the gold Honda and saw what appeared to be a black semiautomatic handgun and clothing consistent with the robberies in plain sight.  A state search warrant was issued for the search of the gold Honda and RAMIREZ's residence, and officers executing the warrants found distinctive clothing and other items matching those captured on surveillance footage during the robberies.  In a post-*Miranda* interview, RAMIREZ denied involvement in the robberies, but agreed to wear the clothing found in his car in the manner worn by the robber in the surveillance footage.  I compared photographs taken by FPD of RAMIREZ to surveillance footage showing the perpetrator of several of the robberies and I believe it to be the same person.  A more detailed description of several of the robberies is included below.

      **B.**      **<u>October 20, 2020 Robbery</u>**

      9.      On or about October 20, 2020, RAMIREZ robbed a Mobil gas station on West A Street in Hayward, California.  Based on the account of the victim and surveillance footage from the store, as described in a HPD report, the following events unfolded: RAMIREZ entered the gas station wearing a black/grey inside-out hooded sweatshirt with the hood up, a backwards black baseball cap, black/grey pants with a distinctive blue logo, dark shoes, and a black COVID-19-style mask.  RAMIREZ used the sleeves of his sweatshirt to open the door.  He loitered around the store before taking a bottle of water and approaching the counter with it as he wiped the bottle with his sleeves.  RAMIREZ reached the counter and told the clerk he had a sick five-year-old child for whom he needed to buy medicine, but he did not have money.  The clerk said she was sorry but could not help him.  RAMIREZ then retrieved what appeared to be a black semiautomatic handgun from his waistband and pointed it towards the clerk while keeping it lowered, threatening to shoot her if he had to.  The clerk told RAMIREZ not to do this and said he would get in trouble because there were cameras all over the store.  RAMIREZ appeared to become upset and walked around the counter towards the clerk.  The clerk, in fear for her life,

grabbed a stack of $20 bills and handed them to RAMIREZ.  RAMIREZ then fled, leaving the

water bottle he had taken to the counter.[4]  Three photographs are copied below, two screenshots

from the Mobil surveillance camera footage depicting the perpetrator of the robbery, and a

photograph taken by FPD of RAMIREZ during his FPD interview.  The photographs appear to

depict the same person.  The two screenshots from the surveillance footage are on the left:



10.     The inside out sweatshirt worn by RAMIREZ during the robbery appears to

match a sweatshirt found in RAMIREZ's gold Honda.  The photograph copied below on the left

is a screen capture from surveillance footage of the robbery showing the tagless logo on the back

of the robber's inside-out sweatshirt.  The photograph on the right depicts one of the sweatshirts

found in RAMIREZ's gold Honda.

---

[4] DNA testing as conducted on the water bottle, which resulted in a weak and incomplete
mixture of at least three contributors.  Based on the testing, RAMIREZ could not be included or
excluded as a contributor to the mixture, after it was compared with RAMIREZ's DNA.

BERGH AFF. IN SUPPORT OF CRIMINAL COMPL.



11.     RAMIREZ also wore black/grey pants during the robbery with a distinctive blue logo near the left pocket.  The photo copied below on the left is a screen capture from the robbery; the photo copied on the right depicts a pair of pants found in RAMIREZ's gold Honda:



e

**C.     November 3, 2020 Robbery**

12.     On or about November 3, 2020, RAMIREZ robbed a 7-Eleven convenience store on West Sunnyoaks Avenue in Campbell, California.  Based on the account of the victim and surveillance footage from the store, as described in a CPD report, the following events unfolded:

RAMIREZ entered the store wearing a black/grey, inside-out hooded sweatshirt, a grey beanie hat with a yellow logo, black/grey pants with a distinctive blue logo, dark shoes, a blue COVID-19-style mask, and a grey glove.  RAMIREZ asked the clerk a question and the clerk approached RAMIREZ to help him.[5]  RAMIREZ told the clerk that he needed money because his son was sick, insurance did not want to cover it, and RAMIREZ did not have a job.  As RAMIREZ spoke to the clerk he pulled what appeared to be a black handgun out of his pocket and held it at his side.  RAMIREZ then told the clerk to open the register.  RAMIREZ and the clerk walked behind the counter, the clerk opened the register out of fear for her life, and RAMIREZ took approximately $1,500 from the register, and then fled.

13.     The surveillance footage from the 7-Eleven appears to show RAMIREZ wearing what appeared to be the same pants and hooded sweatshirt that were worn during the October 20, 2020 robbery in Hayward that were ultimately found in RAMIREZ's gold Honda.  The surveillance footage also shows RAMIREZ wearing a grey glove that was worn during other robberies in the series and appears similar to a grey glove that was found in the gold Honda. Two screenshots from the surveillance footage are copied below:



14.     Approximately eight minutes after the robbery, a License Plate Reader mounted

---

[5] Although in most of the robberies, the victim reported that the perpetrator spoke without an accent, the 7-Eleven clerk reported that the perpetrator spoke with a Spanish accent.

on a CPD patrol car captured a photograph of RAMIREZ'S gold Honda, driving away from the
7-Eleven, about a block away from the store.  The photograph is copied below:



**D.      November 6, 2020 Robbery**

15.      On or about November 6, 2020, RAMIREZ robbed a 7-Eleven convenience store
on Washington Boulevard in Fremont, California.  Based on the account of the victim and
surveillance footage from the store, as described in a FPD report, the following events unfolded:
RAMIREZ entered the store wearing a black/grey, inside-out hooded sweatshirt, black/grey
pants with a distinctive blue logo, dark shoes, a black COVID-19-style mask, and a grey glove.
RAMIREZ told the clerk he needed a soda from the soda machine.  As the clerk approached to
help, RAMIREZ pulled what appeared to be a black handgun from his pocket and told the clerk
he needed money.  RAMIREZ ordered the clerk to walk to the cash register, which the clerk did.
The clerk gave RAMIREZ approximately $200 from the register.  RAMIREZ then ordered the
clerk to open a second register, which the clerk did and showed RAMIREZ it was empty.
RAMIREZ then left the store.

16.      The surveillance footage from the 7-Eleven appears to show RAMIREZ wearing
the same pants and hooded sweatshirt that were worn during the October 20, 2020 and
November 3, 2020 robberies in Hayward and Campbell, which were ultimately found in
RAMIREZ's gold Honda.  Stains or holes can be seen on RAMIREZ's pants in approximately
the same locations as the pants found in the gold Honda.  A screenshot from the 7-Eleven

surveillance footage is copied below on the left and a photograph of the pants found in RAMIREZ's car is copied below on the right:



17.     Around an hour before the robbery, a license plate reader in Fremont captured RAMIREZ's gold Honda driving in the direction of the 7-Eleven, about three-and-a-half miles away.

### E.     November 13, 2020 Robberies

18.     On or around November 13, 2020, RAMIREZ robbed a Quik Stop gas station on Farwell Drive and a Chevron gas station on Paseo Padre Parkway, both in Fremont, California.

19.     Approximately two hours before the robbery of the Quik Stop, RAMIREZ's gold Honda was seen driving by the Quik Stop.  Approximately twenty minutes before the robbery, surveillance footage shows the gold Honda park less than a block away from the Quick Stop. The footage shows the driver get out of the car, move around it and get in or reach in the front and rear passenger areas.

20.     Approximately fifteen minutes before the robbery, RAMIREZ's gold Honda was captured on surveillance footage driving through a parking lot of a business neighboring the Quik Stop, and then driving on Farwell Place, a short street that begins at the Quik Stop and ends around 500 feet away from the Quik Stop at the entrance of a Residence Inn and an Extended Stay America.[6]  The surveillance footage shows the gold Honda driving in the direction of the Residence Inn and the Extended Stay America.  Shortly before the robbery, a person matching the description of the robber can be seen walking towards the QuikStop.  Based on the direction the person was walking, I believe that RAMIREZ may have parked at or near the Residence Inn before walking to the Quick Stop to rob it.

21.     Based on the account of the victim and surveillance footage from the store, as described in a FPD report, the following events unfolded at the Quik Stop:  RAMIREZ entered the store wearing a black/grey, inside-out hooded sweatshirt, blue jeans, dark shoes, a COVID-19-style mask, and a grey glove.  RAMIREZ walked around looking at items while the clerk was helping another customer.  When the clerk finished with the other customer, RAMIREZ approached the clerk and said he was sorry he had to do this.  RAMIREZ told the clerk he would not hurt her but needed money because he had a sick family member.  The clerk saw RAMIREZ holding a black object inside his jacket pocket, but could not tell if it was a firearm.  The clerk complied and took approximately $130 from the cash register and put it on the counter.  RAMIREZ told the clerk to put the money in his hands, which she did.  RAMIREZ then left the store.  Surveillance footage from the Quik Stop shows that RAMIREZ wore a black/grey inside-

---

[6] The gold Honda's license plate number is visible in surveillance video of the gold Honda leaving the hotel parking lot area after the robbery. The gold Honda was also easily recognizable because, at this time, it had a broken left rear window which was covered with what appeared to be white cardboard.  A license plate reader also captured the gold Honda a block away from the Quik Stop approximately two hours before the robbery, shortly before it was noted on the surveillance video.

BERGH AFF. IN SUPPORT OF CRIMINAL COMPL.

out, hooded sweatshirt and grey glove, consistent with the previous robberies described.  Two screenshots from the surveillance footage are copied below:



22.     Shortly after the robbery, surveillance footage shows a man matching the description of the robber running towards the hotels at the end of Farwell Place from the area of the Quik Stop.  Approximately four minutes later, surveillance footage shows RAMIREZ's gold Honda driving on Farwell Place in the direction of the Quik Stop.  The footage shows the gold Honda pull into the parking lot of the business directly behind the Quik Stop and park in the lot. RAMIREZ exits the gold Honda, wearing different clothing than he did during the robbery, including a pair of grey shorts with a wide red vertical stripe on the outside of the legs over pants, and appears to work on the gold Honda's windshield wipers.  RAMIREZ then flags down a FPD patrol car and asks where the nearest auto part store was located, before leaving the area. Based on my training and experience, I believe that RAMIREZ may have flagged down the officer to appear innocent and avert suspicion from himself for the robbery.

23.     Around an hour later, RAMIREZ robbed a Chevron gas station on Paseo Padre Parkway.  Approximately forty minutes before the robbery, RAMIREZ's gold Honda was first captured on surveillance footage in a parking lot of a building neighboring the Chevron.  The surveillance footage shows, from a distance, the gold Honda parking, and the driver getting out

Bergh Aff. in Support of Criminal Compl.

of the gold Honda and appearing to steal something from the vehicle parked next to his.  The driver then gets back into the gold Honda and the vehicle leaves the parking lot.  A few minutes later, the gold Honda re-enters the parking lot and then leaves again.  Then, minutes before the robbery, a person matching the description of the robber can be seen walking through the parking lot towards the Chevron.

24.      Based on the account of the victim and surveillance footage from the store, as described in a FPD report, the following events unfolded at the Chevron:  RAMIREZ entered the gas station wearing a black/grey, inside-out hooded sweatshirt, blue jeans, dark shoes, a COVID-19-style mask, and a grey glove.  RAMIREZ approached the clerk and said that he needed help for a family member that was sick.  RAMIREZ walked behind the counter and pulled what appeared to be a black handgun from his waistband and held it at his side.  RAMIREZ told the clerk he was sorry but that he was going to have to take all the money in his register.  Another clerk heard RAMIREZ say something like "I need help.  My son he's sick.  I don't have insurance.  I'm losing my insurance.  I don't have a job.  I'm not going to hurt you guys.  My son is very sick.  Give me all the money."  RAMIREZ took approximately $925 from the registers before fleeing the store.  Surveillance footage from the Chevron shows that RAMIREZ wore a black/grey inside-out, hooded sweatshirt and grey glove, consistent with the previous robberies described.  Immediately after the robbery, surveillance footage from the neighboring building shows a man matching RAMIREZ's description running southeast through the parking lot in which the gold Honda had previously parked.[7]

_____

[7] After the robbery at the Chevron, an FPD officer checked a Fremont Parks' parking lot off Sailway Drive, which was in the direction that the perpetrator of the robbery was last seen running.  The officer saw a Hispanic mam in a green Honda Civic who somewhat matched the physical description of the suspect.  As the officer talked with the man, who was not RAMIREZ, he noticed there was a black hooded sweatshirt on the back seat that appeared to be inside out.  FPD conducted a consent search of the vehicle, but found nothing of interest besides the hooded sweatshirt.  FPD conducted multiple in-field lineups, but no witnesses positively identified the

BERGH AFF. IN SUPPORT OF CRIMINAL COMPL.

**F.**     **RAMIREZ is Apprehended**

25.     FPD conducted a records check on the license plate associated with the gold Honda.  According to the records check, a female driver had been cited in the vehicle in or around August 2019 and given an address in Union City that was also associated with RAMIREZ in law enforcement databases.  On or about the evening of November 16, 2020, FPD conducted surveillance of the residence and observed the gold Honda driving nearby.  FPD officers followed the gold Honda, which ultimately parked at a gas station in Union City.  The driver, who was subsequently identified as RAMIREZ, was the sole occupant of the gold Honda. RAMIREZ was wearing a pair of grey shorts with red vertical stripes down the outside of the legs that appeared to be the same as the shorts RAMIREZ is seen wearing on surveillance video when speaking to an FPD officer after the Quik Stop robbery on or about November 13, 2020. RAMIREZ got out of the gold Honda and approached the undercover FPD officers, who were parked next to a marked UCPD patrol vehicle.  The UCPD officers arrested RAMIREZ on an unrelated outstanding warrant after identifying him.  The FPD officers looked in the gold Honda and saw what appeared to be a black handgun on the rear floorboard.  They also saw clothing consistent with the clothing worn by the perpetrator of the robberies.  The gold Honda was towed to FPD and a state search warrant was issued for its search, as well as the search of RAMIREZ's residence and another vehicle registered to RAMIREZ.

26.     In the gold Honda, FPD officers found (among other evidence):

        a.     A black rubber replica handgun;

        b.     Black/grey sweatpants with a blue logo near the front left pocket.  A photograph of the sweatpants is copied in Paragraphs 11 and 16, above;

---

man as the perpetrator of the robbery.  The man was transported to FPD for an interview.  After the interview, FPD concluded that the man likely was not involved in the robbery and released him.

      c.      A black/grey hooded sweatshirt with a "Hanes" tag.  A photograph of the sweatshirt is copied in paragraph 10, above;

      d.      A grey glove; and

      e.      Other clothing consistent with clothing worn by RAMIREZ during robberies.

27.     Officers conducted a search of RAMIREZ's residence.  In the residence they found (among other evidence):

      a.      Four black/grey hooded sweatshirts consistent with those worn by RAMIREZ during the robberies; and

      b.      A black rubber replica handgun.

28.     FPD interviewed the other occupants of RAMIREZ's residence and showed them a screen capture of the surveillance footage from one of the robberies showing the perpetrator. One of the residents thought the person in the screen capture looked like RAMIREZ.  Another resident, who was RAMIREZ's brother, told officers that it was not RAMIREZ.  When interviewed, both his roommate and his brother also mentioned that RAMIREZ had financial issues, and spent most of his money on gambling.

29.     During a post-*Miranda* interview, RAMIREZ denied involvement in the robberies and told officers that it was coincidence that his gold Honda was seen in the area of multiple robberies.  RAMIREZ told officers that he did not have any children and was currently the only driver of the gold Honda, although his mother had driven the vehicle.  He admitted to being the driver of the Honda Accord when it captured by video surveillance at the Quik Stop and Chevron robberies on November 13, 2020.  However, he denied entering either the Quik Stop or the Chevron, and stated that although it was him who had walked towards the Chevron station in the surveillance video, the person running away from Chevron after the robbery was not him.  He clarified that he was wearing a black button-up shirt while walking towards the Chervon, not the clothing the robber was wearing.  It should be noted that FPD detectives never observed anyone

Bergh Aff. in Support of Criminal Compl.

in the surveillance video walking in the parking lot while wearing a black button-up shirt.

        **G.**      **<u>Affect on Interstate Commerce</u>**

        30.      Based on my training, experience, and research, I know that 7-Eleven is an international chain of convenience stores, headquartered in Dallas, Texas.  The convenience store chain has franchises across the United States, which conduct interstate commercial transactions.  Accordingly, there is probable cause that RAMIREZ's robbery of the 7-Eleven in Fremont on or about November 6, 2020 affected interstate commerce.

**VI.**    **REQUEST TO SEAL AFFIDAVIT, CRIMINAL COMPLAINT, AND ARREST WARRANT**

        31.      Based on my training and experience, disclosure of the existence of this affidavit, the complaint, the arrest warrant, and related documents may cause the Subject or other co-conspirators unknown at this time to destroy evidence or conceal on-going criminal activity, jeopardizing the progress of the ongoing investigation.  I therefore request that the Court seal this affidavit, the complaint, the arrest warrant, and related documents.

//

//

//

Bergh Aff. in Support of Criminal Compl.

## VII.    CONCLUSION

32.    On the basis of my participation in this investigation and the information summarized above there is probable cause to believe that on or about November 6, 2020, in the Northern District of California, Nelson Enrike RAMIREZ, knowingly obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), to wit, RAMIREZ committed a robbery of a 7-Eleven convenience store engaged in interstate commerce, in violation of Title 18, United States Code, Section 1951(a).

/s/ Mikael Bergh

_____
MIKAEL BERGH
Special Agent
Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me
pursuant to Fed.R.Crim.P. 4.1 and 4(d) on this  5th day of March 2021.

_____
HONORABLE SUSAN VAN KEULEN
United States Magistrate Judge

BERGH AFF. IN SUPPORT OF CRIMINAL COMPL.

16